## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GASTAR EXPLORATION INC., *et al.*,[1] | § | Case No. 18-36057 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY MOTION
## FOR ENTRY OF AN ORDER (I) SCHEDULING
## A COMBINED DISCLOSURE STATEMENT APPROVAL
## AND PLAN CONFIRMATION HEARING, (II) ESTABLISHING
## A PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE
## AND RELATED PROCEDURES, (III) APPROVING THE SOLICITATION
## PROCEDURES, (IV) APPROVING THE CONFIRMATION HEARING NOTICE,
## AND (V) WAIVING THE REQUIREMENTS THAT THE U.S. TRUSTEE CONVENE
## A MEETING OF CREDITORS AND THE DEBTORS FILE SCHEDULES AND SOFAS

THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER FOR NOVEMBER 1, 2018, AT 2:30 P.M. (CT) BEFORE THE HONORABLE MARVIN ISGUR, 515 RUSK STREET, COURTROOM 404, HOUSTON, TEXAS 77002.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Gastar Exploration Inc. (1640), and Northwest Property Ventures LLC (8685). The location of the Debtors' service address is: 1331 Lamar Street, Suite 650, Houston, Texas 77010.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state the following in support of this motion:

## Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) scheduling a combined hearing (the "Confirmation Hearing") on the adequacy of the Debtors' disclosure statement (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") and confirmation of the Plan;[3] (b) establishing a deadline for objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline") and approving related procedures; (c) establishing a deadline to file a brief in support of confirmation of the Plan and reply to any objections (the "Reply Deadline"); (d) approving the solicitation procedures regarding votes to accept the Plan (the "Solicitation Procedures"); (e) approving the form and manner of notice of the Confirmation Hearing (the "Notice"); (f) conditionally (i) directing that the United States Trustee for the Southern District of  Texas (the "U.S. Trustee") not convene a meeting of creditors (the "Creditors' Meeting") under section 341(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and (ii) waiving the requirement that the Debtors file statements of financial affairs and schedules of assets and liabilities; and (g) allowing the notice period for the Disclosure Statement and Confirmation Hearing to run simultaneously.

---

[2]   A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Michael A. Gerlich, Chief Financial Officer and Senior Vice President of Gastar Exploration Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on October 31, 2018 (the "Petition Date").

[3]   *See Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time the "Plan"), filed contemporaneously herewith. Capitalized terms used but not defined herein have the meanings given to them in the Plan and the Disclosure Statement, as applicable.

2.      In connection with the foregoing, subject to the Court's availability, the Debtors request that the Court approve the following schedule of proposed dates (the "Confirmation Schedule"):

| Event | Date |
|---|---|
| Voting Record Date | **October 25, 2018** |
| Start of Solicitation | **October 26, 2018** |
| Voting Deadline | **October 30, 2018** |
| Petition Date | **October 31, 2018** |
| Objection Deadline | **December 4, 2018** |
| Reply Deadline | **December 10, 2018** |
| Disclosure Statement/ Confirmation Hearing | **December 13, 2018** |

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of an order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, 3020 and 9006, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## Prepetition Marketing Process and RSA

6.　　The Debtors filed these chapter 11 cases with a prepackaged plan of reorganization under which all classes of creditors have either voted 100 percent to accept or are unimpaired.　The Plan is the culmination of years of marketing efforts and negotiations around strategic alternatives. The Debtors have explored all available avenues and determined that the only viable path forward at this time is the restructuring embodied in the Plan.　The key terms of the Plan and the Debtors' restructuring are set forth in the restructuring support agreement, dated as of October 26, 2018, (including all schedules and exhibits thereto, the "RSA"), by and between the Debtors and their largest (and only) funded-debt creditor and largest common shareholder, Ares Management LLC and its affiliated funds (collectively, "Ares").　Additionally, also on October 26, 2018, the Debtors entered into a separate restructuring support agreement with certain of their hedge counterparties (the "Hedge Parties"), the Debtors' largest creditor constituency other than Ares, under which the Hedge Parties have agreed support the Debtors' restructuring as well.　Significantly, the RSA contains certain milestones that will require the Debtors to proceed through these chapter 11 cases efficiently or risk jeopardizing the significant value embodied in the Plan and RSA.

7.　　The RSA requires that the Debtors secure an order confirming the Plan within 60 days of the Petition Date and emerge from these chapter 11 cases within 20 days thereafter (the "Milestones").　In light of the Debtors' substantial prepetition marketing efforts, the Milestones provide ample time for any interested party to participate in these chapter 11 cases. Indeed, the RSA provides flexibility for parties to submit (and the Debtors to consider and negotiate) alternative proposals for the first 30 days of these chapter 11 cases.　For the reasons

described below, the time for the Debtors to move forward with their restructuring is now—delaying the confirmation process would not result in any benefit to the Debtors' estates.

8.      As described in greater detail in the Gerlich Declaration, beginning in October 2016, the Debtors commenced a process seeking proposals to address their existing capital structure—specifically the May 2017 maturity of the Debtors' $325 million in legacy second lien notes—including comprehensive refinancings, controlling equity investments, and merger transactions.   In connection with this process, the Debtors' advisors reached out to over 40 potential third party investors and held management meetings with 13 of those potential investors.  The Debtors ultimately received three refinancing proposals and engaged in advanced discussions regarding those proposals, including a proposal from Ares Management LLC and its affiliated funds (collectively, "Ares").  Through a highly competitive process, the Debtors selected the Ares proposal, based on a range of factors described in the Gerlich Declaration.

9.      On March 3, 2017, the Debtors consummated a comprehensive balance sheet refinancing with Ares (the "2017 Refinancing").  The Debtors hoped that the 2017 Refinancing would allow them to weather the industry storm.  Due to the combination of market forces and operational challenges described in greater detail in the Gerlich Declaration, that was not the case.  Beginning in mid-2017, the Debtors determined to explore further strategic alternatives and liquidity enhancing measures.

10.     In August 2017, the Debtors retained Tudor, Pickering, Holt & Co. ("TPH") to assist the Board in its review of strategic alternatives.  In September 2017, TPH commenced parallel processes seeking to sell the Debtors' non-core assets outside of the STACK region (i.e., their assets in the West Edmund Hunton Lime Unit ("WEHLU")), as well as seeking comprehensive out-of-court merger or sale proposals for the Debtors' entire business.   In

connection with the WEHLU process, TPH reached out to 150 potential purchasers. In connection with the broader merger and sale process, TPH contacted 42 potential counterparties. Gastar received eight proposals in connection with the WEHLU process and ultimately closed a sale of the WEHLU assets in February 2018 for a purchase price of $107.5 million, before purchase adjustments. The Debtors did not receive any actionable proposals for their entire business during the parallel sale and merger process.

11.     In May 2018, facing an increasingly tight liquidity outlook, and dearth of comprehensive sale, merger, or refinancing options, the Debtors' board of directors (the "Board"), began to consider more holistic alternatives, including a chapter 11 filing. Prior to commencing chapter 11 cases, however, the Board determined to go to the market once more to solicit comprehensive out-of-court merger, sale, financing, and refinancing proposals. In June 2018, PWP and TPH began contacting potential financial investors, many of whom had been contacted during the 2017 process and some of whom were existing holders of the Debtors' common equity. In parallel with these renewed marketing efforts, the Debtors also began discussions with Ares regarding an Ares-sponsored balance sheet restructuring. On July 20, 2018, Ares filed an updated Schedule 13D with the Securities Exchange Commission attaching a term sheet setting forth proposed terms for a balance sheet restructuring. On July 23, 2018, the Debtors publicly disclosed that the Board has formed a special committee to consider strategic alternatives and that the Debtors were considering the proposed Ares terms as well as other alternatives. Negotiations regarding the initial terms proposed by Ares would play out (and substantially evolve) over the next three months.

12.     On August 1, 2018, after an extensive private marketing process, the Debtors issued a press release informing the market that it was embarking on a public process to try to address the

Debtors' balance sheet and liabilities. The press release specifically stated that the Debtors were "considering potential strategic transactions, including financing, refinancing, sale, or merger transactions, and is encouraging proposals from existing stakeholders and interested third-parties." On August 21, 2018, the Debtors distributed a process letter inviting proposals and informing the public how any interest party could participate and make a proposal. The Debtors directly distributed the process letter initially to 95 potential financial and strategic investors and to an additional 17 potential financial and strategic investors over the following two weeks. The process letter established the deadline to submit bids as October 1, 2018 (the "Bid Deadline"). Of the 112 parties contacted in connection with the public process, 30 executed nondisclosure agreements, and 12 participated in management presentations. The Debtors received three proposals from strategic investors by the Bid Deadline, none of which were actionable. These proposals were each contingent on a fundamental restructuring of the Debtors' balance sheet, including the restructuring or elimination of the Ares debt and cancellation of the Debtors' preferred equity prior to or contemporaneously with a business combination.

13.     Additionally, in the months preceding the Bid Deadline, the Debtors received communications from a number of their common and preferred equity holders. The Debtors encouraged these shareholders to participate in the ongoing marketing process and directed them to the process letter. No known shareholders participated in this process—despite multiple invitations—and the Debtors have not received any actionable restructuring proposals from existing equity holders.

14.     Through extensive, arm's-length negotiations, the Debtors and Ares agreed to the terms of the restructuring set forth in the RSA. In light of the results of their public marketing process, and facing a dire liquidity outlook, the Debtors ultimately determined that the

restructuring negotiated with Ares, which contains a number of valuable concessions by Ares and contemplates fully committed funding to facilitate the Debtors' restructuring and emergence from chapter 11, was the only viable path forward. The Debtors and Ares executed the RSA on October 26, 2018 and launched solicitation of the Plan shortly thereafter.

15. Importantly, the RSA requires that the Debtors move efficiently through these chapter 11 cases. In light of their lengthy marketing processes and a lack of available alternatives, the Debtors believe that the Milestones reasonable. The RSA and Plan will allow the Debtors to swiftly emerge from chapter 11 with a capital structure that will facilitate necessary capital investment. Any further marketing of the Debtors' business or elongation of the process is unlikely to lead to a different result. To the extent a party in interest wishes to make an proposal, the RSA allows a reasonable period of 30 days after the Petition Date for interested parties to submit (and the Debtors to consider) alternative proposals. The Debtors therefore submit that confirming the Plan on the expedited schedule set forth in this motion, as well as the other relief requested herein is in the best interests of the Debtors, their estates, and all stakeholders, and should be approved.

**Independent Investigation and Lien Review**

16. In addition to the extensive marketing processes described above, in the months preceding the Petition Date, an independent committee of the Board (the "Investigation Committee") with the assistance of the Debtors' legal advisors, Kirkland & Ellis LLP, have conducted a detailed investigation into any material claims or causes of actions of the Debtors' estates against Ares and the liens securing the Debtors' debt obligations. In connection with this investigation, the Investigation Committee, through their advisors, reviewed more than 28,000 documents and conducted ten interviews. While the investigation is ongoing, the Investigation Committee has not yet uncovered any material estate claims or causes of action against any party to be released pursuant to the Plan, including Ares. The Debtors expect that the Investigation

Committee will be in a position to recommend proceeding (or not) with the releases contemplated by the Plan in advance of the Debtors' proposed confirmation hearing.

17.     Based on the foregoing, the RSA represents the best path forward at this time and any delay to review claims, causes of action, or lien perfection would not benefit the Debtors or their estates.  Accordingly, the Milestones and the Debtors' proposed confirmation schedule are reasonable under the circumstances.

## The Solicitation Procedures

18.     The Debtors commenced solicitation of holders of claims regarding the Plan prior to the Petition Date in accordance with the following Solicitation Procedures and the Bankruptcy Code.  On October 26, 2018, the Debtors' claims and balloting agent, BMC Group, Inc. (the "Claims and Balloting Agent"),[4] distributed packages containing the Disclosure Statement, the Plan, and ballots (collectively, the "Solicitation Package") to holders of claims and interests entitled to vote to accept or reject the Plan as of the Voting Record Date.  Holders of claims or interests that received the Solicitation Package were directed in the Disclosure Statement and ballots to follow the instructions contained in the ballots (and described in the Disclosure Statement) to complete and submit their respective ballots to cast a vote to accept or reject the Plan.  The Disclosure Statement and applicable ballot expressly provide that each such holder needs to submit its ballot so that it is actually received by the Claims and Balloting Agent on or before the Voting Deadline to be counted.  Certain holders of claims and interests were not provided a Solicitation Package because such holders are:  (a) unimpaired under, and conclusively presumed to accept, the Plan under section 1126(f) of the Bankruptcy Code; or (b) impaired,

---

[4]     The Debtors have also applied for authority to retain BMC Group, Inc. as their claims and noticing agent.  *See Debtors' Emergency Application for Entry of an Order Appointing BMC Group, Inc. as Claims, Noticing, and Solicitation Agent Effective* Nunc Pro Tunc *to the Petition Date*, filed contemporaneously herewith.

entitled to receive no distribution on account of such claims or interests under the Plan, and therefore deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

19.     As of the Petition Date, holders of Class 3 Hedge Party Claims, Class 4 Statutory Lien Claims, Class 5 Term Loan Claims, and Class 6 Second Lien Notes Claims have voted to accept the plan.  The Debtors completed a final tabulation of the ballots on October 31, 2018.  The Debtors' procedures and standard assumptions for tabulating ballots include:

| **Votes Not Counted** | – any ballot that is illegible or contains insufficient information to permit the identification of the holder of the claim |
| | – any ballot that is not actually received by the Claims and Balloting Agent by the Voting Deadline |
| | – any unsigned ballot |
| | – any ballot that partially rejects and partially accepts the Plan |
| | – any ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan |
| | – any ballot superseded by a later, timely submitted valid ballot |
| | – any improperly submitted ballot |
| **No Vote Splitting** | – holders are required to vote all of their claims within a particular class either to accept or reject the Plan and are not permitted to split any votes |
| **Establishing Claim Amounts** | – claim amounts held by a holder, as applicable, were pre-populated in the ballots.  The Debtors determined these amounts as of the Voting Record Date based on the books and records of the applicable administrative agent |

## Basis for Relief

## I.     Scheduling the Confirmation Hearing and the Objection Deadline.

20.     Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto."  Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."

21.     Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary."   Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

22.     The Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan.  *See* 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to combine a hearing on approval of a disclosure statement with the confirmation hearing).   In accordance with Section 6 of the Complex Chapter 11 Procedures, the Bankruptcy Court will allow the notice periods for the Disclosure Statement and the Confirmation Hearing to run simultaneously, upon the consideration of certain factors, including: (i) whether it is important to the success of the reorganization that the case move expeditiously; (ii) the terms and complexity of the proposed plan; (iii) the extent to which the proposed plan is consensual; and (iv) whether a class treated under section 1129(b) of the Bankruptcy receives due process if not given 25 days' notice of the Disclosure Statement and a subsequent 25 days' notice of a confirmation hearing.

23.     The Debtors request that the Court schedule a hearing to consider approval of the Disclosure Statement and confirmation of the Plan on December 13, 2018 and schedule the Objection Deadline at 4:00 p.m., prevailing Central Time, on December 4, 2018.  The Debtors also request that the Court require that objections to the Disclosure Statement or confirmation of the Plan must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (d) state with particularity the legal and factual basis

for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties (as defined herein) so as to be actually received by the Objection Deadline. Further, the Debtors request that they (and other parties in support of the Plan) be permitted to file a brief in support of confirmation of the Plan and reply to any objections on or before December 10, 2018.

24.     It is appropriate to schedule a combined hearing to consider approval of the Disclosure Statement and confirmation of the Plan and have the notice periods run simultaneously in accordance with section 9006(c)(1) of the Bankruptcy Code and the Complex Chapter 11 Procedures. **First**, the plan is confirmable and supported by a 100% of the holders of claims entitled to vote on the Plan. Specifically, holders of 100% of the Term Loan Claims, holders of 100% of the Second Lien Notes Claims, holders of 100% of the Hedge Claims, and holders of 100% of the Statutory Lien Claims voted in favor of the Plan. Moreover, the proposed schedule provides 30 days' notice of the Confirmation Hearing for parties to evaluate their rights in respect of the Plan, so no party in interest will be prejudiced by the requested relief. **Second**, considering the overwhelming support in favor of the Plan, a combined hearing will reduce the time the Debtors remain in bankruptcy, thereby cutting the costs of administering and funding these chapter 11 cases. **Third**, the Debtors commenced solicitation on October 26, 2018 (48 days prior the requested confirmation hearing date), in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code. The Disclosure Statement and other solicitation materials were distributed to each holder of a claim and interest entitled to vote on the Plan. **Fourth**, to satisfy the milestones set forth in the RSA, an order confirming the Plan must be entered no later than 60 days after the Debtors commence these chapter 11 cases. Failure to achieve the Milestones may cause the Debtors and

their stakeholders to lose the substantial value embodied in the RSA.  Accordingly, the proposed Confirmation Schedule is reasonable given each of these factors.

25.     Courts in this district have approved expedited confirmation schedules under appropriate circumstances.  *See, e.g.*, *In re Ameriforge Group Inc.*, No. 17-32660 (DRJ) (Bankr. S.D. Tex. May 1, 2017) (scheduling combined hearing on approval of the disclosure statement and confirmation of the plan 18 days after the petition date); *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 14, 2017) (scheduling combined hearing approximately 35 days after the petition date); *In re Light Tower Rentals, Inc.*, No. 16-34284 (DRJ) (Bankr. S.D. Tex. Aug. 1, 2016) (scheduling combined hearing approximately 30 days after the petition date); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. Mar. 29, 2016) (scheduling combined hearing approximately 15 days after the petition date).[5]

## II.     Approval of the Solicitation Procedures.

26.     The Debtors distributed the Solicitation Packages and solicited votes to accept or reject the Plan prior to the Petition Date in accordance with sections 1125 and 1126 of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions); 11 U.S.C. § 1126(b)(2) (holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation provided adequate information).  Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purpose of soliciting their votes to accept or reject a plan of reorganization.  Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents

---

[5]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures and enter any orders the court deems appropriate." As set forth herein, the Solicitation Procedures comply with the Bankruptcy Code and the Bankruptcy Rules, and the Debtors seek approval of the Solicitation Procedures, the ballots, and the procedures used for tabulations of votes to accept or reject the Plan.

27.     Similar solicitation procedures have been approved in other chapter 11 cases in this district and others. *See, e.g.*, *In re Ameriforge Group Inc.*, No. 17-32660 (DRJ) (Bankr. S.D. Tex. May 1, 2017) (approving prepetition solicitation procedures for holders of claims); *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 14, 2017) (same); *In re Stone Energy Corp.,* No. 16-36390 (MI) (Bankr. S.D. Tex. Dec. 21, 2016) (same); *In re Light Tower Rentals, Inc.*, No. 16-34284 (DRJ) (Bankr. S.D. Tex. Sept. 1, 2016) (same); *In re Goodrich Petrol. Corp.*, No. 16-31975 (MI) (Bankr. S.D. Tex. Apr. 18, 2016) (same); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. Mar. 29, 2016) (same).

### A.     Voting Record Date.

28.     Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." The Disclosure Statement and ballots clearly identify October 25, 2018, as the date for determining which holders of claims were entitled to vote to accept or reject the Plan.

### B.     Plan Distribution and Voting Deadline.

29.     Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims in the same voting class and the time for voting was not unreasonably short. Furthermore, there is no

applicable federal securities law governing the time period for solicitation of votes on the Plan. Additionally, such voting claims and interests are not publicly traded bonds. All holders of claims entitled to vote on the Plan were transmitted the Plan on or about October 26, 2018. As clearly set forth in the Disclosure Statement and ballots, the Voting Deadline was set for October 30, 2018. Thus, the Debtors respectfully submit that holders of claims had adequate time to consider the Plan and the Disclosure Statement and submit a ballot before the Voting Deadline. *See, e.g.*, *In re Transcoastal Corp.*, No. 15-34956 (HDH) (Bankr. N.D. Tex. Dec. 18, 2015) (approving solicitation procedures with voting period of two days); *In re Cross Canyon Energy Corp.*, No. 10-30747 (JB) (Bankr. S.D. Tex. Mar. 11, 2010) (approving solicitation procedures with voting period of one day where holders of claims and interests entitled to vote were familiar with the restructuring efforts and the plan); *In re Davis Petroleum Corp.*, No. 06-20152 (RSS) (Bankr. S.D. Tex. Mar. 10, 2006) (approving solicitation procedures with voting period of five days).

30.      The transaction proposed in the Plan is the product of hard-fought negotiations among the Debtors and their stakeholders. Prior to the commencement of solicitation, the Plan and the Disclosure Statement was subject to extensive review and comment by holders of Term Loan Claims, the Second Lien Notes Claims, the Hedge Party Claims, and the Statutory Lien Claims.

31.      The Debtors submit that each of the holders of Term Loan Claims, the Second Lien Notes Claims, the Hedge Claims, and the Statutory Lien Claims is sophisticated and able to review the Disclosure Statement, review and vote on the Plan, and respond with objections, if any, by the deadlines requested in this motion. Additionally, as described above, the Voting Deadline is consistent with the terms of the RSA. For these reasons, the Debtors believe that the solicitation

period is sufficient and appropriate for holders of claims entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

### C. The Ballots.

32.       Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form No. 314, only to "creditors and equity security holders entitled to vote on the plan."  Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity holder or an authorized agent, and conform to the appropriate Official Form."  Only the holders of the Term Loan Claims, the Second Lien Notes Claims, and the Hedge Claims entitled to vote on the Plan were transmitted ballots.  The forms of ballots used in solicitation are based on Official Form No. 314, and have been modified, as applicable, to address the particular circumstances of these chapter 11 cases to include certain information that the Debtors believe to be relevant and appropriate for holders of claims or interests entitled to vote to accept or reject the Plan.  The forms of ballots used in solicitation are annexed as **Exhibits 3**, **4**, **5**, and **6** to **Exhibit A** attached to this motion.

### D. Vote Tabulation.

33.       As described above, the Debtors are using standard tabulation procedures in tabulating claim holder votes.  These procedures are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a).  These tabulation procedures also are similar to those used in cases in this district and others.  *See, e.g.*, *In re Ameriforge Group Inc.*, No. 17-32660 (DRJ) (Bankr. S.D. Tex. May 1, 2017) (approving prepackaged vote tabulation procedures similar to those utilized here); *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 14, 2017) (same); *In re Forbes Energy Servs. Ltd.*, No. 17-20023 (DRJ) (Bankr. S.D. Tex. Jan. 25, 2017) (same); *In re Illinois Power Generating Co.*, No. 16-36326 (MI) (Bankr. S.D.

Tex. Dec. 12, 2016) (same); *In re Goodrich Petrol. Corp.*, No. 16-31975 (MI) (Bankr. S.D. Tex.

Apr. 18, 2016) (same); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex.

Mar. 29, 2016) (same).

**E.    The Debtors' Prepetition Solicitation Was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law.**

34.    Section 1125(g) of the Bankruptcy Code provides that:

> [A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

35.    Section 1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if— (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

36.    Prepetition solicitation must therefore either comply with generally applicable

federal or state securities laws and regulations (including the registration and disclosure

requirements thereof) or, if such laws and regulations do not apply, the solicited holders must

receive "adequate information" under section 1125 of the Bankruptcy Code.

37.    The Debtors respectfully submit that their prepetition solicitation is exempt from

the registration requirements of the Securities Act of 1933 (the "Securities Act"), under one or

more of the exceptions from registration provided thereunder, including section 4(a)(2) thereof,

state "Blue Sky" laws, or any similar rules, regulations, or statutes.   Section 4(a)(2) of the

Securities Act creates an exemption from nonbankruptcy securities law for transactions not

involving a "public offering."  15 U.S.C.A. § 77d(a)(2).  With respect to holders of Class 5 Term

Loan Claims and Class 6 Second Lien Notes Claims who will receive securities under the Plan,

the Debtors understand that all parties entitled to vote on the Plan were accredited investors, as

that term is defined in Rule 501 of Regulation D, and that there was no general solicitation in

connection with the sale of securities under the Plan.  Specifically, the ballot contains the provision

that by signing the ballot each holder is certifying to the Debtors and the Court that it is either an

accredited investor or the authorized signatory for a holder that is an accredited investor.  As such,

the Debtors' prepetition solicitation does not constitute a public offering because it falls within the

exemption set out in section 4(a)(2) of the Securities Act.  Holders of Class 3 Hedge Claims and

Class 4 Statutory Lien Claim will receive cash under the plan, and so the restrictions of the

Securities Act are not implicated.  The Debtors respectfully submit that the requirements of

section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtors' prepetition solicitation.

As discussed more fully below, the Debtors will seek a determination from the Court at the

Confirmation Hearing that all solicited holders received "adequate information" as defined by

section 1125(a) of the Bankruptcy Code in compliance with section 1126(b)(2) of the Bankruptcy

Code.

38.     Debtors in prior cases have utilized section 4(a)(2) of the Securities Act to exempt

their prepetition solicitation from the registration and disclosure requirements otherwise applicable

under nonbankruptcy law.  *See*, *e.g.*, *In re Southcross Holdings L.P.*, No. 16-20111 (MI) (Bankr.

S.D. Tex. Mar. 29, 2016) (approving solicitation procedures that included section 4(a)(2)

exemption); *In re EveryWare Global, Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015)

(same); *In re Sorenson Commcn's, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014)

(same); *In re CHL Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Oct. 4, 2012) (same); *In re Peak*

*Broad., LLC*, No. 12-10183 (PJW) (Bankr. D. Del. Jan. 12, 2012) (same); *In re Source Interlink Cos.*, No. 09-11424 (KG) (Bankr. D. Del. Apr. 29, 2009) (same); *see also In re Revel AC, Inc.*, No. 13-16253 (JHW) (Bankr. D.N.J. Mar. 28, 2013) (same).

## III.   Approval of the Disclosure Statement at the Confirmation Hearing.

39.     The Debtors will request that, at the Confirmation Hearing, the Court find that the Disclosure Statement contains "adequate information" as defined in section 1125(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 1126(b)(2) (because there is no nonbankruptcy law governing the solicitation of claim and interest holders prior to the Debtors commencing these chapter 11 cases, such solicitation must have been based on the Debtors providing such holders "adequate information").

40.     The Disclosure Statement contains adequate information because it is extensive and comprehensive.  What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable parties to vote in an informed way, and that standard is easily met here.[6]  For instance, the Disclosure Statement contains descriptions and summaries of, among other things:  (a) the Debtors' reorganization efforts;[7] (b) certain events and relevant negotiations preceding the commencement

---

[6]   *See* 11 U.S.C. § 1125(a)(1); *see also Mabey v. SW Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) (Courts are vested with wide discretion to determine whether a disclosure statement contains "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan") (internal quotations omitted); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (The determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case).

[7]   *See* Article I of the Disclosure Statement.

of these chapter 11 cases;[8] (c) the key terms of the RSA and Plan;[9] (d) risk factors affecting consummation of the Plan;[10] (e) a liquidation analysis setting forth the estimated recovery that holders of claims and interests would receive in a hypothetical chapter 7 case;[11] (f) financial information that is relevant in determining whether to accept or reject the Plan;[12] and (g) federal tax law consequences of the Plan.[13]  In addition, and as noted above, the Disclosure Statement and the Plan were subject to extensive review and comment by the holders of Term Loan Claims, Second Lien Notes Claims, and Hedge Party Claims.  Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

## IV.    Waiver of Certain Solicitation Package Mailings.

41.    The Debtors request that the Court waive the requirement that they mail a copy of the Solicitation Package to holders of claims and interests presumed to accept the Plan.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders unless the court orders otherwise). Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement." Accordingly, Bankruptcy Rule 3017 may be deemed not to apply here considering the prepetition solicitation process employed.  *See also* 11 U.S.C. § 1126(f)–(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary).  But the Debtors make this

---

[8]    *See* Article VI of the Disclosure Statement.

[9]    *See* Article IV of the Disclosure Statement.

[10]    *See* Article VII of the Disclosure Statement.

[11]    *See* Exhibit D of the Disclosure Statement.

[12]    *See*  Exhibit E of the Disclosure Statement.

[13]    *See* Article XI of the Disclosure Statement.

request out of an abundance of caution.  Distributing the Solicitation Packages to non-voting creditors is an unnecessary expense.  The Debtors submit that their cash should be preserved for the benefit of all stakeholders and that their resources should not be distracted by having to satisfy this mailing requirement.  The Debtors also made the Solicitation Package (excluding the ballots) available at no cost on their chapter 11 website:  http://www.bmcgroup.com/gastar.

## V.    Approval of the Form and Manner of the Notice.

42.    The Debtors request approval of the Notice, substantially in the form of **Exhibit 1** attached to **Exhibit A** attached to this motion.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Notice will:  (a) provide notice of the commencement of these chapter 11 cases; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Confirmation Hearing; (d) disclose the date and time of the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan; and (e) provide the record date for receiving distributions under the Plan.

43.    The Notice will be served upon the Debtors' creditor matrix and all interest holders of record, which service will occur as soon as possible after the Court's approval of the Notice. The Notice likewise will be served upon the Notice Parties (as defined below).

44.    Bankruptcy Rule 2002(*l*) also permits the Bankruptcy Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Prior to the Confirmation Hearing, the Debtors propose to publish a notice in the *Wall Street Journal (National Edition)* within five business days following entry of the Order, substantially in the form of **Exhibit 2** annexed to **Exhibit A** attached hereto (the "Publication Notice").  In addition, the Publication Notice will be available on the Debtors' chapter 11 website at http://www.bmcgroup.com/gastar.  The Debtors believe that the Publication Notice will provide sufficient notice of the pending approval of the Disclosure Statement, the Confirmation Hearing,

and the Objection Deadline to entities who will not otherwise receive notice by mail as provided herein and through the Solicitation Procedures.

VI.   **Cause Exists to Waive the Requirements that the U.S. Trustee Convene a Meeting of Creditors or Equity Holders and the Debtors File Schedules and SOFAs.**

45.     The Debtors respectfully submit that the circumstances of these chapter 11 cases merit a conditional waiver of the requirements that (a) the U.S. Trustee convene a Creditors' Meeting, and (b) the Debtors file Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "SOFAs").  This relief is appropriate because the Plan already carries the support of all four classes entitled to vote and will satisfy all general unsecured claims in full.

46.     Section 341 of the Bankruptcy Code allows a court to waive the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and solicited acceptances of a plan prior to the commencement of a chapter 11 case.  More specifically, section 341(e) of the Bankruptcy Code provides that:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

47.     The Debtors filed the Plan contemporaneously with this motion on the Petition Date, and the Debtors commenced solicitation of votes to accept or reject the Plan on October 26, 2018, prior to the Petition Date, thereby satisfying the threshold statutory requirement.

48.     Cause exists to waive the section 341 meeting as set forth herein because unsecured creditors holding allowed claims will be paid in full under the Plan and other "first day" relief sought by the Debtors.  In addition, holders of claims entitled to vote on the Plan will not be harmed because they were adequately represented during the Plan negotiation process.  Those negotiations

22

resulted in execution of the RSA.  Furthermore, as of the Petition Date, all holders of claims in impaired classes have voted in favor of the Plan.  The RSA, moreover, requires the Debtors to confirm the Plan within a prescribed timeframe, the failure of which could jeopardize the current support for the Plan.  The Debtors thus respectfully submit that such creditors are not prejudiced by the lack of a Creditors' Meeting.  A section 341 meeting may force the Debtors to delay the Confirmation Hearing, thereby causing additional administrative expenses and professional fees to the detriment of the Debtors' estates.  For these reasons, the Debtors submit that sufficient cause exists to waive the requirement of a section 341 meeting as set forth herein.

49.     The Debtors also request that the time for filing their Schedules and SOFAs be extended until December 28, 2018 and be waived in the event the Plan is confirmed on or prior to that date.  The Court has authority to grant an extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Local Rule 1007-l(b).  Here, cause exists to further extend the deadline because requiring the Debtors to file Schedules and SOFAs would distract the Debtors' management and advisors from the work of ensuring a smooth transition into these chapter 11 cases and an expedited confirmation of the Plan, which is necessary in light of the milestones found in the RSA.  Given the prepackaged nature of these chapter 11 cases, the Schedules and SOFAs would also be of limited utility to most parties in interest—the Debtors have already commenced solicitation and obtained acceptances necessary to confirm the Plan.  The minimal benefit of requiring the Debtors to prepare the Schedules and SOFAs will be significantly outweighed by the substantial expenditure of time and resources the Debtors will be required to devote to the preparation and filing of the documents.  For these reasons, the Court should only contingently require the Debtors to file SOFAs and Schedules if the Plan is not confirmed on or before December 28, 2018.

Additionally, pursuant to the Plan, Claims are allowed to the extent that such Claims would be allowed under applicable nonbankruptcy law.

50.     Courts in this district have frequently waived the requirements for the U.S. Trustee to convene a Creditors' Meeting and for a debtor to file Schedules and SOFAs in other prepackaged chapter 11 cases.  *See, e.g.*, *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 14, 2017) (waiving section 341 meeting if plan confirmed within 75 days of the petition date); *In re Forbes Energy Servs. Ltd.*, No. 17-20023 (DRJ) (Bankr. S.D. Tex. Jan. 25, 2017) (same); *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. Dec. 21, 2016) (same); *In re Light Tower Rentals, Inc.*, No. 16-34284 (DRJ) (Bankr. S.D. Tex. Sept. 1, 2016) (same); *In re Illinois Power Generating Co.*, No. 16-36326 (MI) (Bankr. S.D. Tex. Dec. 12, 2016) (waiving section 341 meeting if plan confirmed within 62 days of the petition date); *In re Transcoastal Corp.*, No. 15-34956 (HDH) (Bankr. N.D. Tex. Dec. 18, 2015) (directing the U.S. Trustee not to convene a meeting of creditors or equity security holders).  For the reasons discussed above, similar relief is appropriate in these chapter 11 cases as well.

51.     Accordingly, the Debtors respectfully request that the Order provide that if the Plan is confirmed on or before December 28, 2018, the Creditors' Meeting will be waived and the Debtors will be excused from filing the SOFAs and Schedules, in each case without further order of the Court.

52.     The Debtors ask that the requested relief be granted without prejudice to the Debtors' ability to seek further extension or modification of the requirements for the U.S. Trustee to convene a Creditors' Meeting and for the Debtors to file Schedules and SOFAs.  The Debtors also request that the Court authorize the Debtors to further extend the deadline to convene a Creditors' Meeting and file Schedules and SOFAs without filing a supplemental motion, and

without further order from the Court, provided that the Debtors obtain the advance consent of the U.S. Trustee.

## **Emergency Consideration**

53.     Pursuant to Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this motion, the Debtors believe an orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 25 days of these chapter 11 cases could disrupt the Debtors' operations as this critical juncture and imperil the Debtors' restructuring.   Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

## **Notice**

54.     The Debtors will provide notice of this motion to:  (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to Ares Management LLC and its affiliated funds; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (h) the state attorneys general for states in which the Debtors conduct business;

and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  November 1, 2018

/s/ Matthew D. Cavenaugh
Patricia B. Tomasco (TX Bar No. 01797600)
Elizabeth C. Freeman (TX Bar No. 24009222)
Matthew D. Cavenaugh (TX Bar No. 24062656)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email:        ptomasco@jw.com
              efreeman@jw.com
              mcavenaugh@jw.com

-and-

Anna G. Rotman, P.C. (TX Bar No. 24046761)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Telephone:    (713) 836-3600
Facsimile:    (713) 836-3601
Email:        anna.rotman@kirkland.com

-and-

Ross M. Kwasteniet, P.C. (*pro hac vice* admission pending)
John R. Luze (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        ross.kwasteniet@kirkland.com
              john.luze@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on November 1, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh